# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOSEPH RICHARDSON                                    CIVIL ACTION

VERSUS                                               NO. 07-2999

N. BURL CAIN, WARDEN LOUISIANA                       SECTION "R"(4)
STATE PENITENTIARY

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.     Factual and Procedural Background

The petitioner, Joseph Richardson ("Richardson"), is a convicted inmate presently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On May 10, 2001,

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

Richardson was charged by bill of information in Orleans Parish with simple burglary of a car in the possession of Shalome Jenkins.[3]

The record reflects that on March 11, 2001, at approximately 12:30 a.m., Jenkins heard a noise outside of her home.[4] She looked out of the window and saw a man, later identified as Richardson, moving around in her car. Jenkins called the police to report the incident. She continued to watch as the man got out of the car and began to search the trunk. When the police arrived, Jenkins watched Richardson walk away from her car and head up the street. New Orleans Police Officer Eugene Smothers, who was answering the call, shined his car light at Richardson, who was standing at the trunk of the car. The officer did not lose sight of Richardson until he was apprehended three houses away.

Jenkins identified Richardson for the officers at the scene. Jenkins and Officer Smothers noticed that Richardson had broken the small rear window of the car to gain access to the car. At the time of his arrest, Richardson also had in his possession a bag with women's shoes belonging to Jenkins.

Richardson was tried before a jury on June 21, 2001, and he was found guilty as charged of simple burglary.[5] On July 27, 2001, the Richardson entered a plea of guilty to the State's multiple offender bill, and the Trial Court sentenced him as a fourth offender to serve 20 years at hard labor.[6]

---

[3]St. Rec. Vol. 3 of 4, Bill of Information, 5/10/01. Jenkins named is spelled "Shalom" in some pleadings.

[4]These facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. St. Rec. Vol. 3 of 4, 4th Cir. Opinion, 2001-KA-2320, pp. 1-3, 3/19/03; *State v. Richardson*, 841 So. 2d 106 (La. Ct. App. 2003) (Table).

[5]St. Rec. Vol. 3 of 4, Trial Minutes (3 pages), 6/21/01; Jury Verdict, 6/21/01; Trial Transcript, 6/21/01.

[6]St. Rec. Vol. 3 of 4, Multiple Bill Hearing Minutes, 7/27/01; Sentencing Transcript, 7/27/01.

On direct appeal, Richardson's appointed counsel filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), a brief certifying that there were no non-frivolous issues to raise on appeal.[7] Richardson filed a brief on his own behalf raising seven grounds for relief:[8] (1) the transcript was incomplete, preventing counsel from filing a proper brief; (2) he was entitled to a stay pending preparation of the full transcript; (3) the identification process was suggestive; (4) the evidence was insufficient to support the verdict because the identification evidence was inadequate; (5) the Trial Court failed to charge the jury on their ability to consider the lack of evidence; (6) the trial was rendered unfair where the Trial Court failed to admonish the jury regarding comments by a panel member that defendant may have robbed her previously; and (7) counsel was ineffective for failure to object to the suggestive identification, the improper jury charge, and the failure of the Trial Court to admonish the jury.

On March 19, 2003, the Louisiana Fourth Circuit Court of Appeal affirmed the conviction and sentence. The Court resolved that Richardson's pro se claims one through four were without merit. The Court also held that his fifth and sixth claims were barred from appellate review under La. Code Crim. P. art. 841, because there was no objection made at trial. The Court also refused to consider Richardson's seventh claim of ineffective assistance of counsel at trial. The Court held that the record was insufficient to consider the claim and that Richardson should reurge the claim on post-conviction review in accordance with Louisiana law.

---

[7]St. Rec. Vol. 3 of 4, Appeal Brief, 2001-KA-2320, 6/4/02. Under *Anders*, appellate counsel can move to withdraw after making a conscientious review of the record and certifying that there are no non-frivolous issues to be raised on appeal.

[8]St. Rec. Vol. 3 of 4, Appeal Brief (pro se), 2001-KA-2320, 10/17/02. The claims are listed as interpreted by the Louisiana Fourth Circuit in its opinion. St. Rec. Vol. 3 of 4, 4th Cir. Opinion, 2001-KA-2320, pp. 1-3, 3/19/03.

Richardson filed a timely[9] writ application with the Louisiana Supreme Court in which he raised three grounds for relief:[10] (1) the Louisiana Fourth Circuit erred in barring review of his claim numbers five, six, and seven and for not requiring a complete transcript under claim numbers one and two; (2) the identification process was suggestive; and (3) the evidence was insufficient to support the verdict because the identification was suggestive.

The Court denied the application on November 14, 2003, without stated reasons.[11] Richardson's conviction became final 90 days later, on February 12, 2004, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

Four months later, on June 9, 2004, Richardson mailed an application for post-conviction relief to the Trial Court raising three grounds for relief: (1) the trial was unfair because the State used the perjured testimony of Shalome Jenkins; (2) the State withheld or suppressed favorable evidence in the form of the 911 emergency tape recording; and (3) counsel was ineffective for failure to investigate the evidence and locate witnesses for trial and for failure to object to the State's witness or obtain a copy of the 911 tape for cross-examination. Although the state court record does not contain a file-stamped copy of this application, the State does not contest that the application

---

[9] La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. Richardson signed his writ application on April 8, 2003. This is presumed to be the earliest date on which he could have given it to prison officials for mailing.

[10] St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 03-KO-1179, 4/28/03 (signed 4/8/03).

[11] *State v. Richardson*, 858 So. 2d 417 (La. 2003); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2003-KO-1179, 11/14/03.

was submitted to the Trial Court.[12]  According to Richardson's verified state court pleadings, the application was mailed by certified mail to the Trial Court on June 9, 2004, and signed for in the clerk of court's office on June 15, 2004.[13]

Richardson later filed an application for writ of mandamus with the Louisiana Fourth Circuit, stating that he had not received a response from the state trial court and requesting an order that the Trial Court rule on his post-conviction claims.[14]  On October 26, 2004, the appellate court granted the writ in part and held that Richardson's post-conviction claims were without merit.[15]  The court also denied the writ of mandamus.

On November 12, 2004, Richardson submitted a writ application, which was filed by the clerk of the Louisiana Supreme Court on December 20, 2004.[16]  He included only one argument, that the Louisiana Fourth Circuit was without authority to assume jurisdiction over his post-conviction claims.  He sought only an order vacating the appellate court's order and directing the Trial Court to rule on the merits of his claims.  The Louisiana Supreme Court eventually denied the application on November 28, 2005.[17]

---

[12]*See* Rec. Doc. No. 17, p. 2.

[13]St. Rec. Vol. 4 of 4, 4th Cir. Writ Application, 2004-K-1728, p.1 and Exhibit B (*see also*, p. 3, Affidavit verifying the Fourth Circuit writ application), 10/5/04.

[14]St. Rec. Vol. 4 of 4, 4th Cir. Writ Application, 2004-K-1728, 10/5/04.

[15]St. Rec. Vol. 4 of 4, 4th Cir. Order, 2004-K-1728, 10/26/04.

[16]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 07-KH-1937, 10/3/07 (signed 9/25/07, postmarked 9/25/07).

[17]*State ex rel. Richardson v. State*, 916 So. 2d 139 (La. 2005); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2004-KH-3149, 11/28/05.

In the meantime, however, Richardson through retained counsel filed a second application for post-conviction relief in the Trial Court on December 2, 2004.[18] Counsel raised three arguments: (1) trial counsel was ineffective (a) for failure to obtain responses to the bill of particulars which would have provided information about Brenda Jenkins, the victim's mother; and (b) for failure to investigate the convictions in the multiple bill to challenge the cleansing period before urging petitioner to enter a plea; (2) the 1983 conviction in the multiple was not reliable and was outside of the cleansing period rendering the multiple offender adjudication suspect; and (3) the State withheld the 911 tape recording in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963),[19] and the tape would have rendered Brenda Jenkins identification inadmissible and would have contradicted Shalome Jenkins testimony.

After several hearings on the matter,[20] the Trial Court found the claims related to the cleansing period and counsel's assistance at the multiple bill hearing to be barred as inappropriate for post-conviction review pursuant to La. Code Crim. P. 930.3 and *State ex rel. Melinie v. State*, 665 So. 2d 1172 (La. 1996).[21] The Court also later denied relief on the remaining claims after

---

[18]St. Rec. Vol. 1 of 4, Uniform Application for Post-Conviction Relief, 12/2/04.

[19]The Supreme Court in *Brady* required the production of the exculpatory and impeachment evidence for reasons of due process and a violation thereof is reviewable on federal habeas review. *Brady*, 373 U.S. at 87. The *Brady* disclosure requirement applies only to exculpatory and impeachment evidence, not to inculpatory or neutral evidence. *See United States v. Nixon*, 881 F.2d 1305, 1308 (5th Cir. 1989); *see also Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994); *Andrews v. Collins*, 21 F.3d 612, 626 (5th Cir. 1994). "If the evidence is inculpatory, then *Brady* is not violated, regardless of the effect at trial of the nondisclosure." *United States v. Gonzales*, 90 F.3d 1363, 1369 (8th Cir. 1996). Thus, only evidence that is exculpatory and material to guilt or that is favorable impeachment evidence must be disclosed by the prosecution for due process reasons. *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Brady*, 373 U.S. at 87.

[20]St. Rec. Vol. 1 of 4, Minute Entry, 1/26/05; Minute Entry, 2/16/05; Minute Entry, 2/23/05; St. Rec. Vol. 2 of 4, Hearing Transcript, 1/26/05; Hearing Transcript, 2/16/05; Hearing Transcript, 2/23/05.

[21]St. Rec. Vol. 2 of 4, Hearing Transcript, 2/16/05. La. Code Crim. P. art. 930.3 sets forth the grounds on which post-conviction relief can be granted. In *State ex rel. Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief. In Richardson's case, the Trial Court recognized that this was not one of

finding that the 911 tape was not authenticated, was not *Brady* material, and nothing on the tape conflicted with the trial testimony.[22]

Over one year after that ruling, on April 27, 2006, Richardson's counsel filed an untimely writ application in the Louisiana Fourth Circuit raising three grounds for relief:[23] (1) the Trial Court erred in barring from post-conviction review the claim of ineffective assistance of counsel at the multiple bill hearing; (2) the Trial Court erred in relying on the chain of custody issue to deny the *Brady* claim; and (3) the multiple offender adjudication was illegal because the 1983 conviction was outside of the cleansing period. The Louisiana Fourth Circuit denied the application on July 10, 2006, finding no error in the Trial Court's denial of post-conviction relief.[24]

Counsel filed a writ application with the Louisiana Supreme Court on August 3, 2006, in which he raised three grounds for relief:[25] (1) trial counsel was ineffective for failure to investigate the multiple bill and for advising Richardson to enter a plea of guilty; (2) the multiple offender sentence was unlawful because one of the underlying convictions was outside of the cleansing period; and (3) the lower courts erred in denying the *Brady* claim which provided new evidence for a new trial. Several days later, on August 9, 2006, Richardson filed a pro se writ application in the

---

the ineffective assistance of counsel claims raised by Richardson on appeal, which were deferred by the appellate court to post-conviction.

[22]St. Rec. Vol. 2 of 4, Hearing Transcript, 2/23/05; St. Rec. Vol. 1 of 4, Minute Entry, 2/23/05.

[23]St. Rec. Vol. 2 of 4, 4th Cir. Writ Application, 2006-K-0468, 4/27/06.

[24]St. Rec. Vol. 2 of 4, 4th Cir. Order, 2006-K-0468, 7/10/06.

[25]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 06-KP-1947, 8/3/06.

Louisiana Supreme Court raising the same grounds as counsel.[26]  The Louisiana Supreme Court denied both applications without reasons on April 27, 2007.[27]

## II.    Federal Petition

On June 25, 2007, the Clerk of Court filed Richardson's pro se petition for federal habeas corpus relief, in which he raised seven grounds for relief:[28] (1) ineffective assistance of trial counsel for failure to pursue a response to the bill of particulars which would have provided a basis to challenge Brenda Jenkins identification; (2) ineffective assistance of trial counsel for failure to investigate the prior convictions in the multiple bill for application of the cleansing period; (3) Brenda Jenkins identification testimony was inadmissible hearsay; (4)(a) the State presented perjured testimony which rendered the trial unfair, (b) the State withheld *Brady* information in the form of the 911 tape, and (c) counsel was ineffective for failing to obtain the 911 tape prior to trial; (5) insufficient evidence to support the conviction because the identification procedure was suggestive; (6) the Trial Court failed to charge the jury that it could consider the lack of evidence; and (7) the trial was rendered unfair because the jury panel was tainted by the comments of a potential juror without an admonition from the Trial Court.  Richardson is now represented by counsel in this matter.[29]

---

[26]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 06-KH-1977, 8/9/06 (signed 7/31/06).

[27]*State v. Richardson*, 955 So. 2d 676 (La. 2007); *State ex rel. Richardson v. State*, 955 So. 2d 682 (La. 2007); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2006-KP-1947, 4/27/07; La. S. Ct. Order, 2006-KH-1977, 4/27/07.

[28]Rec. Doc. No. 3.  Richardson's numbering on the form petition is not consistent with the numbering in the memorandum in support.  For sake of clarity, the Court will rely on the numbering system within the brief, where Richardson includes four claims not listed on the form petition.

[29]Counsel was granted leave to enroll on behalf of Richardson on June 26, 2007.  Rec. Doc. No. 6.

The State filed a response in opposition to Richardson's petition arguing that his first and third claims were not exhausted and his petition can be dismissed for that reason.[30] Alternatively, after assuming that the remaining claims appeared to be exhausted, the State also argued that claims two, four, and five were without merit and claims six and seven are procedurally barred from review.

Richardson's counsel filed a traverse in response to the State's opposition arguing that all of the claims were exhausted because Richardson had pursued review in the Louisiana Supreme Court on each ruling by the lower courts.[31] The State filed a reply thereto arguing that the writ applications presented to the Louisiana Supreme Court did not include each claim raised to the lower courts.[32]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[33] applies to this petition, which is deemed filed in this court under the federal mailbox rule on May 21, 2007.[34] The threshold questions in habeas review under the amended

---

[30]Rec. Doc. No. 11.

[31]Rec. Doc. No. 14.

[32]Rec. Doc. No. 17.

[33]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Richardson's federal habeas petition on June 25, 2007, when the filing fee was paid. Richardson dated his signature on the petition on May 21, 2007. This is the earliest date on which he could have delivered it to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The State has raised both failure to exhaust and procedural default as defenses to Richardson's claims. A review of Richardson's state court pleadings reflects that he has not exhausted in the state courts all of the claims raised in his federal petition. Specifically, he has not exhausted state court remedies as to claims one, three, and four-parts A and C. He also has presented three claims, numbers two, six and seven, which are procedurally barred from federal review. These issues must be addressed as an initial matter before considering the merits of Richardson's other claims.

IV. **Exhaustion Requirement (Claims One, Three, and Four-Parts A and C)**

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A) (2006); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full

time of mailing) (citing *Spotville*, 149 F.3d at 374).

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id*. at 32.

The habeas petitioner bears the burden of proving exhaustion of state court remedies. *See Matthews v. Evatt*, 105 F.3d 907, 912 (4th Cir. 1997). He must demonstrate that he has presented to the state courts a claim that is more than "somewhat similar" to the claim he presents in federal court. *See Picard*, 404 U.S. at 277-78 (holding that the "substance" of the federal claim must have been "fairly presented to the state courts"). The petitioner also must demonstrate that the factual and legal theories used to support his claim at the state level are the same legal theories he asserts in his federal application. *See Dispensa v. Lynaugh*, 847 F.2d 211, 217 (5th Cir.1988) ("[The United States Court of Appeals for the Fifth Circuit] has consistently held that a federal habeas petitioner has failed to exhaust his state remedies when he relies on a different legal theory than he did in state

court or when he makes the same legal claim to a federal court but supports the claim with factual allegations that he did not make to the state courts.").

Fair presentation does not include presenting claims "for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor.'" *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (quoting Pa. Rule App. Proc. 1114); *Carty v. Thaler*, 583 F.3d 244, 254 (5th Cir. 2009). The purposes of the exhaustion requirement "would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

A review of the record reveals that Richardson did not raise claim one, ineffective assistance of counsel for failure to pursue answers to the bill of particulars, or claim three, the inadmissible hearsay, or claim four, parts A and C, perjured testimony and ineffective assistance of counsel for failure to raise the *Brady* issue, to the Louisiana Supreme Court. The State recognizes his failure to exhaust claims one and three. The Court finds that neither he nor his counsel has exhausted remedies as claim four-parts A and C. The court may notice the lack of exhaustion sua sponte, *McGee v. Estelle*, 722 F. 2d 1206, 1214 (5th Cir. 1984) (en banc), and the State's failure to raise it is not a waiver of the defense, 28 U.S.C. § 2254(b)(3). *See also Granberry v. Greer*, 481 U.S. 129, 134 (1987).

Richardson first raised claim one, ineffective assistance of counsel related to the bill of particulars and claim four, part A, perjured testimony, in his pro se application for post-conviction relief submitted to the Trial Court on June 9, 2004. These claims were found to be without merit

by the Louisiana Fourth Circuit on October 26, 2004, when that court considered the claims in connection with Richardson's 2004 application writ of mandamus. Thereafter, Richardson did file a writ application, No. 2004-KH-3149, with the Louisiana Supreme Court. In that application, he did not raise substantive claims. Instead, he sought only an order vacating the appellate court's ruling and directing the Trial Court to rule on his claims. He did not seek substantive relief or properly raise any particular claims to the court at that time. He did not properly present the claims for exhaustion purposes.

As for claim number three, the inadmissibility of Brenda Jenkins's identification, and claim number four-part C, ineffective assistance of counsel for failing to secure the 911 tape, these claims were first raised by Richardson's counsel in his application for post-conviction relief. When the Trial Court denied this application, it did not enter any specific reasons for denying either of these claims. Counsel then filed a writ application in the Louisiana Fourth Circuit, No. 2006-K-0468, and the Louisiana Supreme Court, No. 2006-KP-1947. Richardson's related pro se writ to the Louisiana Supreme Court, No. 2006-KH-1977, was virtually identical to counsel's application. A thorough review of each of these writs reflects that neither Richardson nor his counsel further pursued these claims.

While he did raise other theories of ineffective assistance of counsel to the Louisiana Supreme Court in later applications, this claim was not fairly presented to that court. The case law makes clear that a claim of ineffective counsel on habeas corpus must be limited to the specific claim of ineffectiveness alleged in a writ to the state's highest court. *See McKaskle v. Vela*, 464 U.S. 1053, 1055 (1984). That is not the case here. As noted above, the fact that the claims may have been presented below is not sufficient to constitute proper presentation to the state's highest court.

13

*Baldwin*, 541 U.S. at 32. These claims were not raised again to any court until they were presented by Richardson in the instant federal petition. These claims also are not exhausted.

Richardson did not raise any of these claims, one, three, or four-parts A and C above, with proper particularity to the state's highest court. His federal petition is therefore considered to be a mixed petition, containing both exhausted an unexhausted claims. The record discloses no good cause for Richardson's failure to properly and fully exhaust all of his claims and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

Normally, the Court would recommend that Richardson's petition be dismissed without prejudice to allow him to pursue exhaustion of his claims in the appropriate state courts. However, unexhausted claims, those claims which were not "fairly presented" to the state courts, may be considered "technically" exhausted if the habeas petitioner is now prohibited from litigating those claims in the state courts because of some procedural rule. If that is so, then those "technically" exhausted habeas claims might be considered procedurally defaulted.

If a claim has not been adjudicated on the merits in state court, federal review of that claim may be barred by the doctrine of procedural default if the petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance. *See Cone v. Bell*, __ U.S. __, 129 S. Ct. 1769, 1780 (2009) (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights") (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). When state court remedies are rendered unavailable by the petitioner's own procedural default, federal courts are normally barred from reviewing those claims. *See Coleman*,

501 U.S. at 722. "[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . [then] there is a procedural default for purposes of federal habeas. . . ." *Id.* at 735 n.1.

A petitioner has "technically exhausted" his claims if he fails to properly and timely present them to each level of the Louisiana courts and thereafter would be barred from seeking relief in those courts. *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (citing *Coleman*, 501 U.S. at 731-33; *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995)); *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir. 1998). In such a case, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted and may be dismissed. *Id.*

In this case, it is reasonable to conclude that Richardson is now unable to litigate claims one, three, and four-parts A and C, in the Louisiana courts, and that any attempt to litigate these claims would result in dismissal on state procedural grounds. Richardson has already proceeded in the state courts with two applications for post-conviction relief. Under Louisiana law, any future attempt to raise these claims in another application for post-conviction relief would likely be dismissed as repetitive under La. Code Crim. P. art. 930.4(D) or (E),[35] or as time-barred by the provisions of La.

---

[35]Art. 930.4(D) provides that "[a] successive application may be dismissed if it fails to raise a new or different claim." Art. 930.4(E) also provides "[a] successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

Code Crim. P. art. 930.8.[36]  Therefore, these claims must now be considered procedurally defaulted. *Sones*, 61 F3d at 416 (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993)).

The procedural default doctrine bars federal habeas corpus review if the state courts would now refuse to address a habeas petitioner's unexhausted federal claims because litigation of those claims would be barred by state procedural rules.  Federal habeas review of "technically" exhausted but now procedurally defaulted claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750-51.

It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that "is independent of the federal question and adequate to support the judgment."  *Coleman*, 501 U.S. at 729; *Lee v. Kemna*, 534 U.S. 362, 375 (2002).  In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to "ensur[e] that the States' interest in correcting their own mistakes is respected in all federal habeas cases."  *Coleman*, 501 U.S. at 732.

When a petitioner fails to properly raise his federal claims in state court, as Richardson has done here, he deprives the State of "an opportunity to address those claims in the first instance" and frustrates the State's ability to honor his constitutional rights.  *Id*. at 732, 748.  Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, the Fifth Circuit has held that when a petitioner fails to raise

---

[36]Art. 930.8 provides a two-year period of limitations for filing applications for post-conviction relief and that period generally runs from the date that the applicant's judgment of conviction becomes final under Louisiana law which for Richardson was in 2003.

his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review. *See id*. at 731.

In the instant case, Richardson has other claims which are also in procedural default because they were denied on state procedural grounds. Rather than be repetitive of the procedural default analysis, the Court will consider the standards of review for the procedural default of all of the claims in the next section of this Report.

## V.   Procedural Default (Claims One, Two, Three, Four-Parts A and C, Six, and Seven)

The Court has above already established that Richardson's claim one, ineffective assistance of counsel for failure to pursue answers to the bill of particulars, claim three, the inadmissible hearsay, and claim four, parts A and C, perjured testimony and ineffective assistance of counsel for failure to raise the *Brady* issue, are all in procedural default. The record also reflects that claims two, six, and seven were also dismissed on procedural grounds by the state courts and are in procedural default.

The State recognizes and raises the procedural dismissal of claims six and seven, but overlooked without waiving the procedural bar to claim two. Nevertheless, the Court finds that Richardson's second claim, ineffective assistance in the multiple bill proceeding, is also in procedural default, an obvious defense overlooked by the State's response.

The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. *Nobles*, 127 F.3d at 420. This court has discretion to raise procedural default *sua sponte*, provided

that the petitioner has notice that the issue is being considered. *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk*, 144 F.3d at 358.

The record does not reflect any reason other than inadvertence and an incomplete recitation of the case's procedural history for the State's failure to raise this defense in its briefs. *See Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (*citing Magouirk*, 144 F.3d at 360). Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360. The Court therefore will address the procedural bar of these claims *sua sponte* and as raised by the State.

As determined above, the Court finds that Richardson's unexhausted claims one, three, and four-parts A and C are in procedural default. Richardson's second claim, ineffective assistance of counsel for failure to investigate the multiple bill was raised by counsel in Richardson's second application for post-conviction relief. The Trial Court denied the claim finding it to be barred from post-conviction pursuant to La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*. The claim was raised in the subsequent writ applications by counsel and Richardson through to the Louisiana Supreme Court. Both the Louisiana Fourth Circuit and the Louisiana Supreme Court denied relief without providing reasons. Therefore, the denial of relief by the higher courts is presumed to be based on the same reasons set forth by the Trial Court. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Claims six and seven were raised by Richardson on direct appeal. The Louisiana Fourth Circuit found that the claims were not preserved for appellate review because there had been no contemporaneous objection at trial as required by La. Code Crim. P. art. 841. The Louisiana Supreme Court denied relief without stated reasons. *Ylst*, 501 U.S. at 802.

The claims listed above were denied based on state procedural grounds and Richardson's procedural default. Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman*, 501 U.S. at 731-32; *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

A.     **Independent State Grounds**

As noted above, with respect to claims one, three, and four-parts A and C, technical exhaustion stands as an independent and adequate ground for a procedural default. *Coleman*, 501 U.S. at 732, 748. A dismissal is also independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338.

The bases for the dismissal of claims two, six, and seven, were the state procedural requirements that the claims be made in a proper and timely manner under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* and/or be preserved by contemporaneous objection under La. Code Crim. P. art. 841. The bases for the state courts' dismissal of these claims were therefore independent of federal law and relied strictly on state procedural requirements. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

## B.     Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339). A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id*.

The technical exhaustion as a basis for default is presumptively adequate. *Coleman*, 501 U.S. at 732, 748. This federal habeas court must therefore evaluate the adequacy of each of the rules applied to bar petitioner's second, sixth, and seventh claims.

In doing so, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make

the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002). For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No. CIV. A. 4:00CV684-Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). However, where such a basis exists in state law, the bar must stand.

### 1.    La. Code Crim. P. art. 930.3 and State ex rel. Melinie

Richardson's post-conviction counsel argued to the state trial court that his prior counsel was ineffective for failure to investigate and challenge the convictions in the multiple bill and for advising Richardson to plead guilty. This is the same as Richardson's second claim in his federal

petition.  The Trial Court relied on La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* to bar review of the claim in the last reasoned decision on the issue.

The federal courts have repeatedly held that *State ex rel. Melinie* and La. Code Crim. P. art. 930.3, its statutory basis, are adequate state grounds for dismissal which bar review by the federal courts in a habeas corpus proceeding.  *See*, *e.g.*, *Hull v. Stalder*, 234 F.3d 706, No. 99-31199, 2000 WL 1598016, at *1 (5th Cir. Sept. 28, 2000) (Table, Text in Westlaw); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086, at *8 (E.D. La. June 30, 2005) (Berrigan, C.J.) (Art. 930.3 and *State ex rel. Melinie* are independent and adequate); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879, at *5 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (same); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123, at *7 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820, at *4 (E.D. La. July 31, 2000) (Duval, J.) (same).  The Court therefore finds that the state procedural bar imposed under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* is adequate to bar review of the merits of Richardson's claim.

The Court reiterates that it is not within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy.  *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim).  In this case, the Court finds that the state procedural bar imposed under La. Code Crim. P. art. 930.3 is adequate to bar review of the merits of Richardson's ineffective assistance of counsel claims.  *Lott v. Miller*, No. 05-6046, 2008 WL 4889650, at *1 n.1 (E.D. La. Nov. 3, 2008) (Africk, J.) (applying Art. 930.3 to an ineffective assistance of counsel claim).

## 2. Contemporaneous Objection under La. Code Crim. P. art. 841

The state courts also denied relief to Richardson on the jury charge and admonition issues, claims six and seven in this federal petition, because of his failure to make a contemporaneous objections at trial to preserve the claims for appeal. Louisiana law, specifically La. Code Crim. P. art. 841, provides that an "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." It is well settled that the "contemporaneous objection" rule is an additional "independent and adequate" state procedural ground which bars federal habeas corpus review. *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977). This Court will not consider Richardson's sixth and seventh claims.

## C. Cause and Prejudice

To establish a cause for his procedural default, including as it relates to the unexhausted claims, Richardson must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). He has not demonstrated in his pleadings the existence of any objective factor external to the defense that impeded his, or his counsel's, ability to raise any of the claims in a procedurally proper manner.

There is no obvious cause in the record for the failure to timely challenge the multiple bill proceedings and related ineffective assistance claims (claim two) in his direct appeal as would be required by Louisiana law. The record contains no apparent reason for Richardson's failure to pursue the inadmissable hearsay claim (claim three), his perjury claim (claim four-part A), or his ineffective assistance of counsel claims related to the bill of particulars (claim one) or the failure to

raise the *Brady* claim (claim four-part C).  These claims were simply not pursued beyond their initial presentation through to the Louisiana Supreme Court.

With respect to claims six and seven, construing his petition broadly, Richardson's arguments can be read to suggest that his trial counsel's failure to lodge proper and timely objections at trial stands as cause for the default under La. Code Crim. P. art. 841.  First, the law is settled that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." *Murray*, 477 U.S. at 486.  Furthermore, Richardson's ineffective assistance of counsel claim based on the failure to object is itself unexhausted and technically in procedural default.  Richardson raised such a claim on direct appeal, and the Louisiana Fourth Circuit refused to review the claim and directed Richardson to pursue it on post-conviction review.  Richardson never did.  He has not suggested any cause for his failure properly and timely to raise that claim in the state courts, especially after being told to do so by the state appellate court.  Therefore, as the United States Supreme Court has held, the defaulted ineffective assistance of his counsel claim can not and does not constitute cause for the failure properly to raise the other defaulted claims. *Edwards*, 529 U.S. at 452-54.

Having failed to show an objective cause for his many defaults, the Court need not determine whether prejudice existed and the petitioner has not alleged any actual prejudice.  *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

### D.    **Fundamental Miscarriage of Justice**

Alternatively, a petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental

miscarriage of justice. To establish this, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Richardson has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence. *Murray*, 477 U.S. at 496. Furthermore, the arguments now raised in support of this federal habeas corpus petition were before the state courts and offer no basis for reasonable doubt on habeas corpus review. The Court has also reviewed his *Brady* claim and his insufficient evidence claim later in this Report and has found that the claims are meritless. When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Richardson has not met this alternative exception to the procedural bar, his procedurally defaulted claims of ineffective assistance of counsel (claims one, two, and four-part C), inadmissible hearsay (claim three), perjured testimony (claim four-part A), improper jury charge (claim six), and unfair trial for failure to admonish the jury (claim seven) must be dismissed with

prejudice without review of the merits. The Court, however, will proceed to review of the two remaining claims.

## VI.     Standards of Review on the Merits (Claim Four-Part B and Claim Five)

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210

F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

**VII.** **_Brady_ Violation (Claim Four-Part B)**

In this federal petition, Richardson alleges that the State failed to produce or suppressed exculpatory evidence. Specifically, he alleges that the State withheld the recording of the 911 call

to avoid conflicts with the credibility of their star witness, Shalome Jenkins. He argues that the tape recorded statement would have shown that Jenkins's trial testimony was perjured and that she was not actually an eyewitness to the burglary.[37] He further claims that the recording reflects that she repeated things seen by her mother and not things seen by her.[38] He contends that the entire case would have been seen in a different light had the tape been produced to show that Shalome Jenkins's identification was suspect and that it was her mother, and not her, who witnessed the burglary to the car.

This claim was raised in and exhausted through the application for post-conviction relief filed by Richardson's counsel. The Trial Court provided the last reasoned decision on the issue. The Court held that the 911 tape was not *Brady* material and had not been in the possession of the State. Furthermore, the Court held that nothing in the transcript of the recorded conversation conflicted with Jenkins's testimony at trial. The Court found no basis for counsel's conclusion that Jenkins was not a witness and merely repeated what her mother saw. Instead, the transcript showed that, while she was on the phone with police and away from the window, she simply asked her mother if she could recalled what the person was wearing. The Louisiana Fourth Circuit and the Louisiana Supreme Court did not provide reasons for denial of the subsequent writ applications. *Ylst*, 501 U.S. at 802.

Whether evidence is material under *Brady* is a mixed question of law and fact. *Graves v. Dretke*, 442 F.3d 334, 339 (5th Cir. 2006) (citing *Summers v. Dretke*, 431 F.3d 861 (5th Cir. 2005)).

---

[37] To the extent he argues that Shalome Jenkins's testimony amounted to perjury, that claim (claim four-part A) is in procedural default and will not be addressed here.

[38] To the extent he also argues that this rendered her mother Brenda Jenkins's statements inadmissible hearsay, he raised this in his third claim which is in procedural default and will not be addressed here.

The United States Supreme Court has held that suppression by the prosecution of evidence favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Three factors must be considered to evaluate an alleged *Brady* violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching. (2) The evidence must have been suppressed by the State, either willfully or inadvertently. (3) Prejudice must have ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

Considering these elements, evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). The United States Fifth Circuit recently outlined four factors used to determine materiality under *Brady* and *Kyles*:

> The Kyles decision emphasizes four aspects of materiality. First, "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant)." 514 U.S. at 434, 115 S.Ct. 1555. The question is not whether the defendant would have received a different verdict with the disclosed evidence, but "whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. A "reasonable probability of a different result" is shown when the suppression "undermines confidence in the outcome of the trial." Id.
>
> Second, the materiality test is not a test of the sufficiency of the evidence. The defendant need not demonstrate that after discounting the inculpatory evidence by the undisclosed evidence that there would not have been enough evidence to sustain the conviction. Rather, a Brady violation is established by showing "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435, 115 S.Ct. 1555. Third, harmless error analysis does not apply. Id. Fourth, "materiality to be stressed here is its definition in terms of suppressed evidence considered collectively, not item by item." Id. at 436, 115 S.Ct. 1555.

*Graves*, 442 F.3d at 339-40.

The *Brady* rule applies equally to evidence relevant to the credibility of a key witness in the State's case against a defendant. *Giglio v. United States*, 405 U.S. 150 (1972). The prosecution's suppression of impeachment evidence requires a showing that "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *United States v. Holley*, 23 F.3d 902, 914 (5th Cir. 1994) (*quoting United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Claims pursuant to *Brady* involve "'the discovery of evidence <u>after trial</u> of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (*quoting United States v. Agurs*, 427 U.S. 97, 103 (1976)) (emphasis added). Furthermore, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no <u>Brady</u> claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980). *Brady* does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case. *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted). Information also is not material under *Brady* if it is merely cumulative of other evidence already before the fact finder. *Spence v. Johnson*, 80 F.3d 989, 995 (5th Cir. 1996).

The Court has reviewed the entirety of the Trial Court's ruling at Richardson's post-conviction hearing. The Trial Court held as "a matter of fact" that the recorded conversation was in no way in conflict with the testimony at trial. This finding of fact is entitled to deference by this

habeas court because there is nothing in the record to challenge its integrity. Based on this finding, and this Court's review of the record, Richardson has failed for the following reasons to prove that the 911 tape was *Brady* material.

The tape recording was not material to Richardson's defense. The tape recording did not contain anything relevant to impeaching Shalome Jenkins or any of the State's trial evidence. The record before this Court also contains nothing to support Richardson's conclusion that Jenkins did not see him out of her window before calling the police three times. Richardson's arguments are baseless.

Also, the record does not contain any indication that the 911 tape was in the possession of the State prior to trial or that the State or its agents prevented Richardson from obtaining it on his own. Instead, Richardson's post-conviction counsel conceded at the hearing that the tape was not in the State's trial file. Instead, the tape had been obtained at some point by the victim's mother from the New Orleans Police Department.[39] The State did not conceal anything from Richardson or his counsel that was not available to them prior to trial.

Richardson has made no showing that the 911 tape placed the whole case in such a different light as to undermine confidence in the verdict. The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court law. Richardson is not entitled to relief on this claim.

## VIII.  Insufficient Evidence

Richardson alleges that the evidence at trial was insufficient to identify him as the perpetrator of the burglary for which he was convicted. He contends that the identification process at the scene

---

[39]St. Rec. Vol. 2 of 4, Hearing Transcript, pp. 4-6, 2/23/05.

was suggestive, and the identification itself was contrary to the trial evidence. He argues that Shalome Jenkins could only provide police with a general description of a man in her car and could not provide any identifying features.

Richardson first raised this claim in his pro se direct appeal brief. Relying on the holding in *Jackson v. Virginia*, 443 U.S. 307 (1979), and related state law, the Louisiana Fourth Circuit held that the evidence at trial was sufficient to prove that Richardson committed simple burglary. The Court relied on the testimony indicating that Richardson was continually seen in the car by Jenkins and her mother. He also was in the constant vision of the responding police officer, who first saw him rummaging in the trunk and did not lose sight of him until the officer apprehended him three houses away. The Court resolved that this was sufficient evidence for the jury to find that Richardson was the perpetrator. This was the last reasoned decision on the issue since the Louisiana Supreme Court denied Richardson's subsequent writ application without reasons. *Ylst*, 501 U.S. at 802.

A claim of insufficient evidence presents a mixed question of law and fact. *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The well established federal standard set forth in *Jackson v. Virginia*, 443 U.S. at 307, was cited by the appellate court in denying Richardson relief. The *Jackson* standard requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable

doubt. *Jackson*, 443 U.S. at 319; *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000); *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991). The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *Guzman*, 934 F.2d at 82 (citing *Tyler v. Phelps*, 643 F.2d 1095, 1102 (5th Cir. 1981)).

Louisiana law defines simple burglary as "the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60."[40] La. Rev. Stat. Ann. § 14:62 (2009). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1) (2009). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So. 2d 1317, 1321 (La. Ct. App. 1989).

In this case, Shalome Jenkins testified that around 12:30 a.m. on March 11, 2001, she was in her living room on the telephone when she heard a noise outside.[41] She looked out of the window and saw "something black" moving around in her car.[42] She was able to discern that it was a man and there was a flickering light going on and off. The man was in the backseat moving his hands around all over the car. She called the police to report the incident and then called several times to assure that the man was caught in the act.[43] At some point, the man got out of the car and began

---

[40]La. Rev. Stat. Ann. § 14:60 defines the crime of aggravated burglary.

[41]St. Rec. Vol. 2 of 4, Trial Transcript, pp. 2-3, 6/21/01.

[42]*Id*. at 4.

[43]*Id*. at 4-5.

rummaging in the trunk.[44] She was then able to see his slim frame, his clothes, and his skin color.[45] After catching the man three houses away, the police brought him back to her house.[46] She was without a doubt able to identify the man based on his slim frame and the same clothing as the man who was rummaging through her car.[47] She also pointed Richardson out at trial.

Jenkins also testified that the police showed her a bag that had been taken out of her trunk by the man.[48] The bag contained a several pairs of shoes that she had just purchased a few days before the incident. She also testified that she did not authorize Richardson to go into her trunk.[49] She also testified that he had broken the small side window of the backseat door of the car.[50]

Jenkins also testified that she saw Richardson still rummaging in her trunk as the police arrived at her corner.[51] He began to walk away but the police caught him three houses away. She lost sight of him as he walked from in front of her house, but she knew the police had seen him.

The jury also heard the testimony of Officer Eugene Smothers who apprehended Richardson. Smothers testified that, when as he approached the house he was sent to, he saw a man looking inside of the trunk of a car fitting the description of the vehicle in question.[52] He turned his spotlight

---

[44]*Id*. at 5.

[45]*Id*. at 13.

[46]*Id*. at 5-6.

[47]*Id*. at 6.

[48]*Id*. at 6, 10.

[49]*Id*. at 10-11.

[50]*Id*. at 14.

[51]*Id*. at 17-18.

[52]*Id*. at 28-29.

on the man, and the man pulled the trunk down and began to walk away.[53]  He had a bag in his hand, which he dropped as he walked away.[54]  He stayed following the man and was able to stop Robinson less than half of a block away.  He advised him of his rights and the reason for the stop.[55]  He then placed him in the backseat of his patrol car and brought him back to the house where the car was parked.  He also later confiscated his clothes and a cigarette lighter.[56]

  The evidence at trial was more than sufficient for a reasonable jury to find Richardson guilty of the simple burglary of Jenkins's car.  He was seen in and next to the car by the officer and by Jenkins, who did not authorize his presence.  He was seen bending down into the opened trunk and in possession of the white bag containing shoes removed from her trunk.  He was also seen by Jenkins and the officer rummaging in the trunk of the car.  The officer also did not lose sight of Richardson until he stopped Richardson less than half a block or three houses away.  This evidence, including the evidence tending towards identifying him as the perpetrator, was more than sufficient under state law to support the conviction.  *See*, *e.g.*, *State v. Irvine*, 535 So. 2d 365, 368 (La. 1988) ("evidence that defendant was caught at the scene of the burglary in process or just completed, with property stolen in the burglary," was sufficient to support simple burglary conviction); *State v. Credit*, 455 So. 2d 1238 (La. Ct. App. 1984).  Under the *Jackson* standard, this evidence was also sufficient to support the conviction in that a rational trier of fact, after viewing that evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt.

---

[53]*Id*. at 29-30.

[54]*Id*. at 30.

[55]*Id*. at 31.

[56]*Id*. at 32.

The evidence in this case was more than sufficient to support the verdict of simple burglary. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Jackson*. Robinson is not entitled to relief on this claim.

## IX.  Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Joseph Richardson's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[57]

New Orleans, Louisiana, this 31st day of March, 2010.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[57]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.